UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| HAJRIJA HERIC, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No. 4:14 CV 1837 JMB |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

### MEMORANDUM AND ORDER

Hajrija Heric ("Plaintiff") appeals the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability benefits under the Social Security Act. 42 U.S.C. § 401 *et seq*. This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g), along with the consent of the parties under 28 U.S.C. 636(c). Because the final decision of the Commissioner is not supported by substantial evidence as explained below, the decision is reversed and remanded.

**I.     Procedural and Factual Background**

Plaintiff is a 39 year-old woman alleging disability due to lower back problems.[1] (Tr. 58) Plaintiff initially filed for Title XVI disability benefits on May 3, 2011. Plaintiff's application was denied on July 14, 2011. (Tr. 59) Thereafter, Plaintiff requested a hearing before an administrative law judge ("ALJ"). After a hearing in which Plaintiff was represented by counsel, the ALJ found Plaintiff not disabled in a decision dated June 18, 2013. (Tr. 23) That decision became final on September 4, 2014, after the Appeals Council denied Plaintiff's request for review. (Tr. 1-5) Plaintiff timely filed this appeal.

---

[1]     It appears that Plaintiff may also suffer from kidney disease and perhaps some mental health impairments. (See Tr. 14) The ALJ addressed these issues, but on appeal, Plaintiff does not dispute those determinations. (See Plaintiff's Brief, ECF No. 11 at *12-14)

1

In her initial application, Plaintiff claimed that she has been disabled since February 17, 2011. (Tr. 12) Plaintiff claims that she originally injured her back in 2006, while working in an automotive plant in Detroit. It seems that, regarding the 2006 injury, Plaintiff received worker's compensation benefits, her symptoms subsided, and she returned to work. (Tr. 17, 149, 381)

Plaintiff's pain allegedly returned in early 2010. At this time, Plaintiff was treated primarily by her primary care physician, Dr. Emir Keric, with medication, physical therapy, and steroid injections, apparently without success. By December of 2011, Plaintiff began seeing Dr. David G. Kennedy, a specialist neurosurgeon, after a referral from Dr. Keric. (Tr. 371) Dr. Kennedy's initial evaluation of Plaintiff noted that her previous, more conservative treatment did not provide the relief she wanted. (Tr. 381) Dr. Kennedy reviewed Plaintiff's MRIs, noting "a large disc herniation at L5-S1 with considerable degenerative changes in the endplates and impingement of the exiting nerve root." (Id.) Dr. Kennedy diagnosed Plaintiff with "intractable sciatic pain" and recommended a lumbar myelogram in order to further assess Plaintiff's impairments. (Tr. 382)

That myelography, done three days later on December 12, 2011, showed ventral extra-dural defect at L5-S1, resulting in mild spinal canal stenosis and mild scoliosis of the lumbar spine which is convexed to the left. (Tr. 388) A contemporaneous CT scan revealed a disc bulge and very small overlying disc protrusion in the left subarticular zone at L5-S1 which abuts the lateral recess. This contributed to "moderate to severe" bilateral foraminal narrowing, and Plaintiff was diagnosed with mild degenerative disc disease, facet joint osteoarthritis at L5-S1, and mild scoliosis. (Tr. 390-91)

Thereafter, Dr. Kennedy noted Plaintiff continued to experience much pain. He scheduled Plaintiff for additional steroid injections which evidently did not help. Dr. Kennedy

2

then recommended that Plaintiff undergo an elective lumbar decompression and fusion at L5-S1. (Tr. 383) She did so on April 9, 2012.

Meanwhile, Plaintiff's disability case was ongoing, and shortly after the surgery, was before the ALJ for a hearing. In December of 2012, the ALJ and Plaintiff agreed that the case was not ripe for decision, because the results of Plaintiff's recovery from surgery were still mixed, and there was insufficient information upon which to make definitive rulings. (Tr. 28-31) In fact, the evidence regarding Plaintiff's recovery remained mixed.

On the one hand, Dr. Kennedy's treatment notes from the months after the surgery detailed complaints of continuing radiculopathy and burning in Plaintiff's leg. (Tr. 415) X-rays also showed evidence of some post-surgical changes at L5-S1. (Tr. 439) On the other hand, Dr. Kennedy noted in November of 2012 that Plaintiff appeared to be doing "fairly well;" and x-rays of Plaintiff's lumbar spine were "satisfactory." (Tr. 475) Another mylography of the lumbar spine in April of 2013 showed no canal stenosis. (Tr. 540) But a CT scan that same day indicated that necessary bone graft material may have been "incompletely fused." (Tr. 541)

On May 2, 2013, the hearing proceeded, and Plaintiff (with counsel) testified regarding the nature of her pain, her daily activities, and her past work. (Tr. 34-44) Following the hearing, the ALJ issued a decision following the familiar five step process to determine whether an individual is disabled. (Tr. 12-23) At Step One, the ALJ found that Plaintiff was not employed at substantial gainful activity levels. At Step Two, the ALJ found the following severe impairments: herniated disc (status/post spinal fusion surgery), degenerative disc disease of the lumbar spine, anxiety, and depression. At Step Three, the ALJ found that Plaintiff had no impairment or combination of impairments that meets the severity of one of the listed impairments. The ALJ then articulated Plaintiff's residual functional capacity ("RFC"), which

was for light work, with only occasional stooping, kneeling, crouching, and crawling, and some mild non-exertional limitations. At Step Four, the ALJ made alternative findings: the ALJ found that Plaintiff could engage in her past relevant work as a hand packager; or alternatively, at Step Five, the ALJ found that Plaintiff could perform other jobs existing in the national economy, such as garment sorter, or housekeeper. (Tr. 16, 21-22)

## II.     Issues before the Court and Summary of Decision

The substantive question before the Court is whether the final decision of the Commissioner is supported by substantial evidence on the record. More particularly, the parties here dispute: (1) the propriety of the weight given to Plaintiff's treating physician, Dr. Kennedy; and (2) whether substantial evidence supports the RFC.

On the state of the record before the Court, the undersigned cannot say that substantial evidence supports the RFC as found by the ALJ. Primarily, this is because the ALJ did not cite to any medical evidence—either opinion medical evidence or other objective medical evidence—when determining that Plaintiff retained the RFC to engage in light work. This is error because it is well-settled that an RFC must be based on at least "some medical evidence." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). In this case, the ALJ discounted the treating physician's medical opinion regarding disability, but neglected to develop the record to include alternative medical evidence that affirmatively demonstrated that Plaintiff could engage in light work. It also appears that the ALJ substituted her own lay opinion for the opinion of a treating professional. Lauer, 245 F.3d at 703-04.

On remand, the ALJ should develop the record with medical and other evidence sufficient to support an RFC and then articulate specifically how that medical evidence supports the findings within the RFC.

4

**III. <u>Standard of Review</u>**

This Court reviews the final decision of the Commissioner to ensure that it is supported by substantial evidence on the record as a whole. See 42 U.S.C. § 405(g); and <u>Smith v. Shalala</u>, 31 F.3d 715, 717 (8th Cir. 1994). Substantial evidence is "less than a preponderance but is enough that a reasonable mind would find it adequate to support the commissioner's conclusion." <u>Krogmeier v. Barnhart</u>, 294 F.3d 1019, 1022 (8th Cir. 2003). Thus, the Commissioner's decision may not be reversed solely because this Court might have decided the case differently. <u>Id</u>. at 1022. Instead, a reviewing Court must determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the Commissioner's conclusion. <u>Davis v. Apfel</u>, 239 F.3d 962, 966 (8th Cir. 2001).

Additionally, this Court will review the Commissioner's decision for legal error in applying the required five-step process to determine disability status. See 20 C.F.R. §§ 404.1520(a)(4); <u>see</u> also <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987) (describing the five-step process). Steps One through Three require Plaintiff to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her disability meets or equals a listed impairment. If Plaintiff does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. <u>Id</u>. Step Four requires the Commissioner to consider whether Plaintiff retains the RFC to perform her previous work. If Plaintiff proves she cannot do so, then the burden switches to the Commissioner at Step Five to prove that there is work in the national economy that Plaintiff can do, considering her age, work experience, education, and RFC. <u>Id</u>.

**IV.     Discussion**

As noted above, the parties dispute whether: (1) the ALJ properly discounted the treating physician in this case, who opined that Plaintiff is "unable to work in any gainful capacity;" and (2) whether substantial evidence supports the ALJ's RFC for light work. As explained below, the ALJ discounted the opinion of the treating physician and established an RFC for light work. The ALJ did this without citing to any particular medical evidence, and without developing medical evidence supporting an RFC for light work. This violates the ALJ's duty to develop the record and ensure that the ALJ's RFC is based at least "some medical evidence." Lauer, 245 F.3d at 704.

This case must be remanded so that the ALJ can: (1) develop the medical evidence relevant to an RFC determination; and (2) specifically integrate that medical evidence into a new RFC formulation.[2]

**A.  ALJ's Duty to Develop the Record in Social Security Cases Generally**

The primary issue before this Court concerns the ALJ's development of the medical record in formulating her RFC. Plaintiff argues that the record is "devoid" of any opinion that the claimant is capable of performing light work. On the other hand, Defendant claims that the ALJ provided a "detailed" narrative discussion of how the medical facts and non-medical evidence supported the ALJ's findings. Plaintiff's reading of the record is more persuasive.

First, the Court agrees with the parties that "[w]ell-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's

---

[2]  The Court notes that where, as here, the ALJ discounts a treating physician's opinions, the ALJ must give good reasons for doing so. See generally, Papesh v. Colvin, 786 F.3d 1126, 1132-33 (8th Cir. 2015) (discussing the varying weights given to physicians depending on how well-supported the opinions are). Here, because the Court is remanding to expand the record, it is premature for the Court to definitively rule on the propriety of the weight given to Plaintiff's treating surgeon. The ALJ's analysis of the weight given to Dr. Kennedy may change in the context of the new evidence.

6

burden to press his case." Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004). This is because social security proceedings are non-adversarial in nature. The ALJ has no interest in denying benefits and is charged with neutrally developing the facts. Richardson v. Perales, 402 U.S. 389, 410 (1971).

As it relates specifically to Plaintiff's RFC, the "ALJ bears the primary responsibility for assessing a claimant's [RFC] based on all relevant evidence." Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000); see also 20 C.F.R. § 404.1545(a) (3) (explaining that "before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary"). In developing this RFC, the law requires that an RFC must be based on at least "some medical evidence." Lauer, 245 F.3d at 704.

Thus, the law clearly lays upon the ALJ an obligation duty to develop sufficient medical and other evidence to allow herself to make an informed decision. The scope of this obligation to develop the record was discussed in Snead v. Barhart, and provides a helpful guidepost here.

In Snead, a recipient of disability benefits had those benefits revoked due to statutory changes disallowing the award of benefits where alcoholism contributed as a material factor to the original finding of disability. The Commissioner in that case revoked the plaintiff's benefits, even though the plaintiff argued that—independent of his alcoholism—he was disabled due to a chronic heart condition. Id. at 835. The plaintiff even presented evidence that he was hospitalized due to congestive heart failure, but the ALJ did not incorporate evidence of the plaintiff's heart condition in the RFC or otherwise develop evidence relevant to that issue.

The Eighth Circuit reversed and remanded for further development of the crucial issue of the plaintiff's congestive heart failure, which would assist the ALJ in determining whether the

7

physician's opinion deserved controlling weight. Snead, 360 F.3d at 839. The lack of development on this medical issue meant that the Court had no confidence in the reliability of the RFC upon which the ALJ based his decision. Id.

### B. ALJ's Failure to Develop the Record in this Case

In this case, the ALJ described Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant must avoid climbing ropes, ladders, and scaffolds; avoid hazardous heights, and hazardous machinery. The claimant is limited to occasional stopping, kneeling, crouching, and crawling. The Claimant is able to understand, remember, and carry out at least simple instructions and non-detailed tasks.

(Tr. 16)

According to the regulations at 20 CFR § 404.1567(b), light work requires Plaintiff to have the ability to lift 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Plaintiff must also have the ability to do "a good deal" of walking or standing, and do "some" pushing and pulling of arms or leg controls. Id.

The problem here is that all of the record evidence directly relating to these exertional requirements indicates that Plaintiff cannot meet these requirements. Plaintiff testified that she can only lift a "gallon of milk." (Tr. 39) Plaintiff's treating surgeon said that Plaintiff "is unable to lift more than 10 pounds." (Tr. 539) Even the state agency single decision maker opined that Plaintiff could not lift more than 10 pounds. (Tr. 53) Meanwhile, no medical professional or lay person indicated that Plaintiff was able to carry more than ten pounds, as required to engage in light work. Apparently then, the ALJ independently made her own judgment that Plaintiff could lift more than ten pounds. But that is a medical determination reserved to medical professionals, not the ALJ. Lauer, 245 F.3d at 704; see also Pate-Fires v. Astrue, 564 F.3d 935, 946-47 (8th Cir. 2009) (noting that an ALJ is not free to make his own independent medical findings).

8

Additionally, it is not clear what evidence supports the ALJ's particular exertional requirements. For example, the ALJ finishes her analysis of the RFC by saying that the "totality of the evidence indicates that the claimant is limited to light work, with the environmental and postural restrictions set out in the physical residual functional capacity." (Tr. 20) That is a citation to the medical records, but that citation does not support the ALJ's analysis, because the Physical RFC completed by the state agency decision maker limits Plaintiff to lifting/carrying <u>ten</u> pounds occasionally, and less than ten founds frequently. (Tr. 53) The ALJ's RFC, on the other hand, limits Plaintiff to "light work" which consists of lifting/carrying twenty pounds occasionally and ten pounds frequently. <u>See</u> 20 CFR 404.1567(b).

Furthermore, the analysis of the ALJ relating to the RFC is often conclusory. For example, the ALJ says simply that Plaintiff's back surgery was "successful," and that the "totality of the evidence indicates that the claimant is limited to light work." The ALJ does not point to specific medical evidence to back up her conclusions and then integrate that evidence into the analysis.

Part of the issue here is that the ALJ obviously discounted Plaintiff's credibility, and so the ALJ disbelieved the testimony that she could not lift more than ten pounds.[3] In cases such as this (where the ALJ discounted Plaintiff's credibility and the opinion of the treating surgeon, and the record is lacking in other medical evidence), the ALJ should have ordered a consultative examination. <u>See</u> <u>Boyd v. Sullivan</u>, 960 F.2d 733, 736 (8th Cir. 1992) (holding that "[i]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision"); <u>see</u> <u>also</u> <u>Flynn v. Astrue</u>, 513 F.3d 788, 792

---

[3] The ALJ called Plaintiff's credibility "questionable," and said Plaintiff's claims regarding pain were "inconsistent" with her behavior toward treatment, and treatment notes. (Tr. 21) The Court cannot address the ALJ's credibility analysis at this point, because Plaintiff's allegations should be analyzed in the context of the expanded record that the ALJ will compile upon remand.

(8th Cir. 2008) ("If the ALJ does not find any of the medical opinions credible, then she should develop the record further to include medical evidence of a claimant's limitations."). The ALJ cannot simply make her own medical determinations. Pate-Fires, 564 F.3d at 946-47.[4]

Finally, the Court also notes, however, that a mere failure to develop relevant records in-and-of-itself is not sufficient for a remand. In order to remand because of an inadequately developed record, Plaintiff must demonstrate both: (1) failure to develop the record; and (2) unfairness or prejudice from that failure. Haley v. Massanari, 258 F.3d 742, 749-50 (8th Cir. 2001) (noting that a "reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").

Here, where the allegation is that the ALJ failed to develop medical evidence in support of an RFC, prejudice exists. This is because the RFC is the crucial determination that allows the Commissioner to determine either at Step Four that Plaintiff can do past work, or at Step Five that Plaintiff can transition to other work in the national economy. If that determination is erroneous, then Plaintiff is clearly prejudiced by benefits being erroneously denied. See Snead, 360 F.3d at 839, n. 4 (noting that where the ALJ ignored potentially "dispositive" evidence in developing the record, the plaintiff established prejudice by the ALJ's failure).

## V. Conclusion

In the end, it may very well be that there is other medical evidence that can show that Plaintiff has the RFC that the ALJ assigned; but that evidence has not been developed, and it is the burden of the Commissioner to fully and fairly develop that record. Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).

---

[4] In fact, the procedures for ordering a consultative examination appear at 20 CFR § 404.1519a, and it seems that the ALJ did not avail herself of them: "[w]e may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim." See 20 CFR § 404.1519a(b) (emphasis added).

Because of this failure to develop the record to include medical or other evidence supportive of the RFC assigned to Plaintiff in this case, the final decision of the Commissioner is not supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Administrative Law Judge in this matter is **REVERSED** and this cause is **REMANDED** for further proceedings consistent with this Memorandum and Order.

A separate Judgment shall accompany this Memorandum and Order.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of October, 2015